1  Sarah J. Spinuzzi (SBN 305658)
   Email: sarah@coastkeeper.org
2  Lauren Chase (SBN 324162)
   Email: lauren@coastkeeper.org
3  ORANGE COUNTY COASTKEEPER                    JS-6
4  3151 Airway Ave, Suite F-110
   Costa Mesa, CA 92626
5  Telephone: (714) 850-1965

6

7  *Attorneys for Plaintiff Orange County Coastkeeper*

8

9              **UNITED STATES DISTRICT COURT**
10             **CENTRAL DISTRICT OF CALIFORNIA**

11

12  ORANGE COUNTY COASTKEEPER, a        Civil Case No. 8:22-cv-00932-JVS
    California non-profit corporation,      (DFMx)
13
                                         **CONSENT DECREE**
14              Plaintiff,
         vs.
15
                                         **(Federal Water Pollution Control Act,**
16  HIXSON METAL FINISHING, a California  **33 U.S.C. § 1251 *et seq.*)**
    corporation; FPC Management LLC, a
17  California limited liability company; Reid
    Washbon, an individual, as Trustee of the
18  Reid Washbon Trust,
19
20              Defendants.

21

22

23

24

25

26

27

28

### CONSENT DECREE

The following consent decree ("Consent Decree") is entered into by and between Plaintiff Orange County Coastkeeper ("Plaintiff" or "Coastkeeper"), Hixson Metal Finishing ("Hixson"), FPC Management LLC ("FPC"), and Reid Washbon as Trustee of the Reid Washbon Trust ("Trustee") (FPC and Trustee may be collectively referred to as "Landlords") (Landlords together with Hixson, "Defendants"). The entities entering into this Consent Decree are each an individual "Settling Party" and collectively the "Settling Parties."

**WHEREAS**, Orange County Coastkeeper is a non-profit public benefit corporation;

**WHEREAS**, Coastkeeper is dedicated to the preservation, protection, and restoration of the environment, the wildlife and the natural resources of all waters of California, including Newport Bay;

**WHEREAS**, Hixson Metal Finishing is a metal finishing and non-destructive testing facility servicing the aerospace and defense industries;

**WHEREAS**, FPC Management LLC owns the real property underlying a portion of Hixson's industrial operations conducted at 861 Production Place, Newport Beach, CA 92663;

**WHEREAS**, the real property underlying a portion of Hixson's industrial operations conducted at 816 Production Place, Newport Beach, CA 92663 is owned by the Reid Washbon Trust, and Mr. Reid Washbon is the trustee.

**WHEREAS**, Defendants own real property and/or operate a metal finishing and testing facility at 816 and 817-861 Production Place, Newport Beach, California 92663 (the "Facility");

**WHEREAS**, the Standard Industrial Classification ("SIC") codes applicable to the Facility include 3471 (Electroplating, Plating, Polishing, Anodizing, and Coloring);

**WHEREAS**, Defendants' operations at the Facility result in discharges of pollutants into waters of the United States and are regulated by the Clean Water Act Sections 301(a)

and 402. 33 U.S.C. §§ 1311(a), 1342;

**WHEREAS,** discharges from the Facility are regulated by the National Pollutant Discharge Elimination System ("NPDES") General Permit No. CAS000001 [State Water Resources Control Board] Water Quality Order No. 92-12-DWQ, as amended by Order No. 97-03-DWQ, as amended by Order No. 2014-0057-DWQ, as amended by Order No. 2015-0122-DWQ, as subsequently amended by Order 20XX-XXXX-DWQ (effective July 1, 2020) (collectively, as amended, and as may be subsequently amended from time to time, the "Storm Water Permit" or the "Permit"), issued pursuant to Section 402 of the Federal Water Pollution Control Act, 33 U.S.C. §§ 1251 *et seq.* (the "Clean Water Act" or the "CWA") and;

**WHEREAS,** the Storm Water Permit requires all permittees, including Defendants, to comply with, inter alia, the following mandates: (1) develop and implement a storm water pollution prevention plan ("SWPPP"), (2) control pollutant discharges using, as applicable, best available technology economically achievable ("BAT") or best conventional pollutant control technology ("BCT") to prevent or reduce pollutants through the development and application of Best Management Practices ("BMPs"), which must be included and updated in the SWPPP, (3) when necessary, implement additional BMPs to reduce and eliminate discharges as necessary to comply with any and all applicable receiving water limitations, including the California Toxics Rule (40 C.F.R. § 131.38), and/or other requirements set forth in the Permit, including as of July 1, 2020, compliance with the Permit's water-quality based numeric effluent limits ("NELs"), and (4) implement a monitoring and reporting program designed to assess compliance with the Permit;

**WHEREAS,** on January 24, 2022, Coastkeeper issued a 60-day notice letter (the "Notice Letter") to Defendants, their registered agents, select corporate officers, the Administrator of the United States Environmental Protection Agency ("EPA"), the Executive Director of the State Water Resources Control Board (the "State Water Board"), the Executive Officer of the Santa Ana Regional Water Quality Control Board (the

"Regional Water Board"), and the Acting Regional Administrator of EPA Region IX, alleging violations of the Storm Water Permit and the Clean Water Act at the Facility;

**WHEREAS**, on February 23, 2022, Coastkeeper re-issued the Notice Letter to all Defendants after the initial Notice Letter issued on January 24, 2022, sent via certified mail return receipt requested, was returned undeliverable. The re-issued Notice Letter was received by all Defendants according to United Stated Postal Service tracking information.

**WHEREAS**, on May 5, 2022, Coastkeeper filed a complaint against Defendants (the "Complaint") in the United States District Court, Central District of California (Civil Case No. 8:22-cv-00932) (hereinafter, the "Action");

**WHEREAS**, Coastkeeper alleges Defendants are violating the substantive and procedural requirements of the Storm Water Permit and the Clean Water Act;

**WHEREAS,** Defendants deny each of Coastkeeper's claims in the Notice Letter and the Complaint;

**WHEREAS**, the Settling Parties agree it is in their mutual interest to enter into a Consent Decree in this Action setting forth terms and conditions appropriate to resolving the allegations set forth in the Notice Letter and the Complaint without further proceedings;

**WHEREAS**, the Settling Parties agree that all references hereinafter to Defendants' future compliance with the "Storm Water Permit" shall refer to the then-effective version of the Storm Water Permit;

**WHEREAS**, capitalized terms used but not defined herein shall have the meanings ascribed to them in the Storm Water Permit; and

**WHEREAS**, all actions taken by Defendants pursuant to this Consent Decree shall be made in compliance with all applicable Federal and State laws and local rules and regulations.

**NOW THEREFORE IT IS HEREBY STIPULATED BETWEEN THE SETTLING PARTIES AND ORDERED AND DECREED BY THE COURT AS FOLLOWS:**

1.     The Court has jurisdiction over the subject matter of this action pursuant to Section 505(a)(1)(A) of the Clean Water Act, 33 U.S.C. § 1365(a)(1)(A).

2.     Venue is appropriate in the Central District pursuant to Section 505(c)(1) of the Clean Water Act, 33 U.S.C. § 1365(c)(1), because the Facility is located within this District.

3.     The Complaint states claims upon which relief may be granted pursuant to Section 505 of the Clean Water Act, 33 U.S.C. § 1365.

4.     Coastkeeper has standing to bring this action.

5.     The Court shall retain jurisdiction over this matter for purposes of enforcing the terms of this Consent Decree for the life of the Consent Decree, or as long thereafter as is necessary for the Court to resolve any motion to enforce this Consent Decree.

## I.     AGENCY REVIEW AND TERM OF CONSENT DECREE

6.     Plaintiff shall submit this Consent Decree to the United States Department of Justice and EPA (collectively, the "Federal Agencies") within three (3) business days of the final signature of the Settling Parties for agency review consistent with 40 C.F.R. § 135.5. The Federal Agencies' review period expires forty-five (45) days after receipt of this Consent Decree by the Federal Agencies, as evidenced by certified return receipts, copies of which shall be provided to Defendant upon request. If the Federal Agencies comment negatively on or object to entry of this Consent Decree, the Settling Parties agree to meet and confer to attempt to resolve the issue(s) raised by the Federal Agencies within a reasonable amount of time, not to exceed thirty (30) days.

7.     Following expiration of the Federal Agencies' 45-day review period, Coastkeeper shall submit the Consent Decree to the Court for entry.

8.     The term "Effective Date" as used in this Consent Decree shall be the date of entry of this Consent Decree by the Court.

9.     This Consent Decree shall terminate (i) three (3) years after the installation of the Advanced BMPs (as hereinafter defined in Paragraph 12.2 below), unless (ii) an Action

Plan (as hereinafter defined in Paragraph 22 below) is required per Paragraph 21 below, based on sampling results from the 2025-2026 or 2026-2027 reporting year[1], as applicable, in which case the Consent Decree will terminate one year after complete implementation of the measures described in the Action Plan, and/or (iii) if there is an ongoing, unresolved formal dispute regarding Defendants' compliance with this Consent Decree, in which case the Consent Decree will terminate within fifteen (15) days' notice by the Plaintiff that the dispute has been fully resolved (the latter occurring of (i), (ii), or (iii) hereinafter being the "Termination Date," as applicable).The length of time between the Effective Date and the Termination Date shall be the "Term."

      10.     Notwithstanding Paragraph 9 above, if Hixson should cease operations or not otherwise maintain activities regulated by the Permit at all or a portion of the Facility and file a Notice of Termination ("NOT") or obtain a No Exposure Certification ("NEC") coverage for all or a portion of the Facility under the Storm Water Permit before the Termination Date, Hixson shall send Coastkeeper a copy of the proposed NOT/NEC form concurrent with submittal of the same to the Regional Board. For the portion of the Facility covered by the NOT/NEC and except as otherwise specified in this Consent Decree, Hixson shall be released from all non-monetary obligations under the Consent Decree. In the event of an NOT, the Consent Decree will terminate with respect to Hixson, upon the Regional Water Board's approval of the NOT; provided, however, that within ten (10) days of the Regional Water Board's approval of the NOT, Hixson shall notify Coastkeeper in writing of the approval and promptly pay any remaining amounts then due hereunder as provided herein. In the event of an NEC, Hixson shall notify Coastkeeper in writing of the Regional Water Board's approval of the NEC within ten (10) days.

          10.1.   Notwithstanding Paragraph 10 above and subject to the requirements of the Permit, the obligations set forth in paragraph 19 of this Consent Decree shall remain effective and survive in the event the portion of the

---

[1] A "reporting year" is July 1 to June 30.

Facility located at 816 Production Place obtains NEC coverage.

10.2.  Notwithstanding Paragraph 10 above and subject to the requirements of the Permit, this Consent Decree shall remain effective in connection with an assignment pursuant to Paragraph 47 or the arrival of a New Industrial Tenant pursuant to Paragraph 48 herein.

10.3.  Notwithstanding Paragraph 10 above and subject to the requirements of the Permit, this Consent Decree shall remain effective in connection with any and all portions of the Facility not covered by the NOT/NEC.

## II.   COMMITMENTS OF THE SETTLING PARTIES

### A.   Storm Water Pollution Control Best Management Practices

11.    In addition to maintaining the current BMPs at the Facility, Hixson shall develop and implement the BMPs identified herein, as well as any other BMPs necessary to comply with the provisions of this Consent Decree and the Storm Water Permit. Specifically, Hixson shall develop and implement BMPs to prevent and/or to reduce contamination in storm water discharged from the Facility consistent with BAT and BCT and/or when necessary to support attainment of water quality standards ("WQS").

12.    Hixson shall develop and fully implement the following BMPs at the Facility within the phased period provided:

12.1.  Phase I (within 90 days of the Effective Date):

12.1.1.   SWPPP revised/updated in accordance with Paragraph 25 below; and

12.1.2.   Employee training program developed and implemented in accordance with Paragraph 19 below.

12.2.  Phase II (within 180 days of the Effective Date):

12.2.1.   Complete gutter upgrade installation to increase stormwater flow to front of Facility to maximize infiltration (~20-30% of total roof discharge); and

1            12.2.2.       Acquire and implement use of sweeper machine.

2       12.3.   <u>BMP Work Plan</u>. No later than January 1, 2023,  Hixson shall prepare and

3   submit to Coastkeeper for its review and comment, a draft BMP Work Plan describing

4   the advanced BMPs that Hixson will implement at the Facility, including and without

5   limitation, aboveground or belowground stormwater retention/infiltration facilities,

6   treatment, or any combination of the foregoing sufficient to treat and/or retain an

7   eighty-fifth (85th) percentile storm at the Facility (collectively, the

8   "Advanced BMPs"). Except for discharges that occur during a storm event

9   that exceeds the 85th percentile, any stormwater discharged from the Facility shall achieve

10  the values set forth in Table 1 below. Coastkeeper shall have thirty (30) days upon

11  receipt of Hixson's BMP Work Plan to provide Hixson with comments. Within thirty

12  (30) days of receiving Coastkeeper's comments on the BMP Work  Plan,  Hixson  shall

13  accept and incorporate Coastkeeper's comments into the Work Plan, or Hixson shall bear

14  the burden of proof that  incorporation of Coastkeeper's comments would be technically

15  infeasible under BAT/BCT standards. Hixson shall complete construction or installation

16  of the Advanced BMPs in accordance with the BMP Work Plan by no later than

17  December 1, 2023 (the "Preferred BMP Deadline") or December 1,

18  2024 (the "Outside BMP Deadline").

19      13.   <u>Consent of Landlords</u>. To the extent that implementation of any of the BMPs

20  described in this Consent Decree requires consent of Landlords, consent shall not be

21  unreasonably withheld.

22      14.   <u>Confirmation of Completion.</u> Hixson shall provide Coastkeeper with written

23  documentation, including photographs, demonstrating that the required BMPs have been

24  implemented in compliance with Paragraphs 12.1 through 12.3 above within thirty (30)

25  days of completion in each case. Hixson shall diligently (i) file and pursue all required

26  permit applications/agency approvals for any BMPs described in paragraph 12 above and

27  (ii) procure contractors, labor, and materials needed to complete all BMPs by the required

28

deadlines.

**B.     Storm Water Sampling**

15.     <u>Sampling</u>. The following storm water monitoring procedures shall be implemented at the Facility:

15.1.     <u>Frequency</u>. During the Term of this Consent Decree and thereafter in compliance with the Storm Water Permit, Hixson shall collect samples from at least three (3) storm water discharges per reporting year from each of the discharge locations at the Facility provided that at least three (3) Qualified Storm Events, as defined in the Storm Water Permit ("QSEs") occur during the applicable reporting year. QSEs, as defined in the Storm Water Permit, are precipitation events that produce a discharge from at least one (1) drainage area and are preceded by forty-eight (48) hours with no discharge from any drainage area. Hixson shall sample at least one QSE during each half of the reporting year. If, before February 1 of a reporting year, Hixson has collected samples from  fewer than three (3) QSEs, Hixson shall, to the extent feasible, collect samples during as many QSEs as necessary for the remainder of the reporting year until a minimum of three (3) storm events have been sampled. No two (2) samples may be from the same storm event.

15.2.     <u>Documentation</u>. To document the storm water discharge and discharge location, an employee shall take photographs of the storm water discharge and discharge location when samples are collected (the "Sampling Photographs").

15.3.     <u>Parameters</u>. Subject to the provisions of Section XI.C. 7 of the Permit, all samples collected pursuant to this section shall be analyzed for the parameters listed in Table 1 herein.

15.4.     <u>Lab</u>. Except for pH samples, a laboratory accredited by the State of

California shall analyze all samples collected pursuant to this Consent Decree. Unless otherwise required by the Storm Water Permit, analysis of pH shall be completed onsite using a calibrated instrument for pH in accordance with the manufacturer's instructions.

15.5.   <u>Detection Limits</u>. Hixson shall require that the laboratory use analytical methods adequate to detect the individual parameters at or below the values specified in Table 1 or the Storm Water Permit, whichever is lower.

15.6.   <u>Holding Time</u>. All samples collected from the Facility shall be delivered to the laboratory and analyzed within the holding times required in 40 CFR Part 136.

15.7.   <u>Results</u>. Hixson shall request that sample-analysis results and associated chain of custody forms be reported to them within thirty (30) business days of laboratory receipt of the sample.

15.8.   <u>Reporting</u>. Hixson shall (i) submit sampling results to SMARTS no later than thirty (30) days from receipt in accordance with the Storm Water Permit and (ii) provide the complete lab results and all Sampling Photographs to Coastkeeper simultaneously as the sampling results are submitted to SMARTS.

**C.   Visual Observations**

16.   <u>Storm Water Discharge Observations</u>. During the Term of this Consent Decree, Hixson shall conduct visual observations during every discharge sampling event at each location where storm water is discharged from the Facility.

17.   <u>Non-Storm Water Discharge Observations</u>. During the Term of this Consent Decree, Hixson shall conduct monthly non-storm water visual observations at each discharge location.

18.   <u>Visual Observation Records</u>. Hixson shall maintain observation records to

document compliance with Paragraphs 16 and 17 above and shall provide Coastkeeper with copies of such records within thirty (30) days of receipt of Coastkeeper's written request.

**D.   Employee Training**

19.    Within the Phase I stage timeline as indicated in Paragraph 12.1.2 above, Hixson or its consultant (which for the purposes of this Paragraph 19 shall be collectively referred to as "Hixson") shall develop and implement an employee training program that meets the following requirements and ensures (1) there is a sufficient number of employees at the Facility designated to achieve compliance with the Storm Water Permit and this Consent Decree (the "Designated Employees" or "DE"); (2) such Designated Employees are properly trained to perform the required activities to achieve compliance with the Storm Water Permit, the Facility SWPPP, and this Consent Decree; and (3) all Hixson employees at the Facility ("ALL") receive basic information regarding storm water housekeeping and best practices (the "Training Program"). At a minimum, the Training Program shall include the following:

19.1.    <u>Non-Storm Water Discharges</u>. Designated Employees shall be trained on the Storm Water Permit's prohibition of non-storm water discharges so that Designated Employees know what non-storm water discharges are, that non-storm water discharges can result from improper surface washing or the release of any substance from the property, and how to detect and prevent non-storm water discharges.

19.2.    <u>The SWPPP and BMPs</u>. Hixson shall train all Designated Employees on the SWPPP and, specifically, BMP implementation and/or maintenance, as applicable, to ensure BMPs are implemented effectively to prevent the exposure of pollutants to storm water, prevent the discharge of contaminated storm water, and ensure the proper treatment of storm water at the Facility. Designated Employees shall be trained on proper operational procedures and control measures as well

as appropriate hazardous materials use and hazardous waste control and disposal procedures. All training of Designated Employees must include the requirements of the Storm Water Permit and this CD including the additional BMPs outlined in Paragraph 12 above.

19.3.    Visual Observation. Hixson shall designate and train an adequate number of Designated Employees necessary to collect storm water samples from each discharge location at the Facility and conduct visual monitoring as required by this Consent Decree. Such training shall include the proper sampling protocols, including chain of custody requirements, to ensure storm water samples are properly collected, stored, and submitted to a certified laboratory.

19.4.    Storm Water Sampling. Hixson shall designate an adequate number of Designated Employees necessary to collect storm water samples as required by this Consent Decree and the Storm Water Permit. The Training Program shall include training of Designated Employees sufficient to ensure (i) proper sampling protocols, including chain of custody requirements, are followed at all times and (ii) storm water samples are properly collected, stored, and submitted to a certified laboratory.

19.5.    Training Implementation. Training of at least two Designated Employees ("Designated Trainers" or "DT," as identified in the Facility SWPPP) shall be provided by a Qualified Industrial Storm Water Practitioner (a "QISP," as defined in Section IX.A of the Permit) familiar with the requirements of this Consent Decree and the Storm Water Permit. The Designated Trainers received their annual training from the QISP in June 2022 shall continue to receive annual training from the QISP. The Designated Trainers and/or the QISP shall provide

the training set forth in this Paragraph 19.

19.6.    <u>Language</u>. The Training Program shall be conducted, and all training materials shall be made available in the language in which the employee(s) participating in the Training Program are fluent. If necessary to accomplish the foregoing or where translation would otherwise contribute to (i) staff comprehension of the Training Program and/or (ii) compliance with this Consent Decree and the Storm Water Permit, Hixson shall provide translation services at all training sessions and of training materials.

19.7.    <u>Training Program Frequency - DE</u>. The Training Program shall be repeated annually or more frequently as necessary to ensure all Designated Employees are familiar with the requirements of this Consent Decree and the Storm Water Permit.

19.8.    <u>Training Program Frequency – ALL</u>.  All employees shall receive initial training  to ensure all employees are familiar with the requirements of this Consent Decree and the Storm Water Permit.  All new staff shall receive this training within thirty (30) days of hiring or sooner if necessary to ensure training is received before assuming responsibilities for compliance with this Consent Decree or the Storm Water Permit.

20.    <u>Training Records</u>. Hixson shall maintain training records to document compliance with this section and shall provide Coastkeeper with a copy of such records within thirty (30) days of receipt of Coastkeeper's written request.

### E.    Reduction of Pollutants in Discharges

21.    <u>Storm Water Contaminant Reduction</u>. Hixson shall develop and implement BMPs such that contaminants in storm water discharges from the Facility maintain concentrations that are equal to or less than the values set forth in Table 1 below (the

"Table 1 Values"). Failure to achieve Table I Values shall not be deemed a violation of the Permit or this Consent Decree so long as Hixson continues to make timely and diligent efforts as required by the Permit and herein to further reduce the level of pollutants in the discharges. Starting in the 2023-2024 reporting year if the Preferred BMP Deadline is met or the 2024-2025 reporting year if the Outside BMP Deadline is met, (i) any Permit NEL exceedance and/or, separately, (ii) any two exceedances of any Table 1 Value at any one Discharge Location or three exceedances of the same Table 1 Value from any combination of discharge locations in the annual monitoring year shall trigger the Action Plan requirements set forth in Paragraph 22 below.

**Table 1. Numeric Values for Storm Water Discharges[1]**

| Parameter | Limit | Source of Limit |
|---|---|---|
| pH | 6.5 – 8.5 S.U. | Basin Plan |
| Total Suspended Solids | 100 mg/L | Permit NAL |
| Oil and Grease | 15 mg/L | Permit NAL |
| Total Recoverable Zinc | 0.095 mg/L | Permit NEL |
| Total Recoverable Copper | 0.00578 mg/L | Permit NEL |
| Total Recoverable Aluminum | 0.75 mg/L | Permit NAL |
| Total Recoverable Cadmium | 0.0053 mg/L | Permit NAL |
| Total Recoverable Nickel | 1.02 | Permit NAL |
| Total Recoverable Iron | 1.0 mg/L | Permit NAL |
| Total Recoverable Lead | 0.221 mg/L | Permit NEL |
| Total Recoverable Silver | 0.0183 mg/L | Permit NAL |
| Nitrate + Nitrite (as Nitrogen) | 0.68 mg/L | Permit NAL |
| Dissolved Chromium (VI) | 0.016 mg/L | California Toxics Rule |

Plaintiff agrees if any Table 1 parameter is not detected from any discharge location in three consecutive QSEs, then that parameter will be removed from Table 1 in this Consent Decree for the remainder of its Term[2].

22.    Action Plan. In the event the requirement to prepare an Action Plan is

---

[2] Not detected shall be identified as either non-detect ("ND") or a value less than the laboratory detection limit.

triggered at the Facility pursuant to Paragraph 21 above, Hixson shall prepare and submit to Coastkeeper a plan for reducing and/or eliminating the discharge of the parameter in question during the next reporting year at the Facility (an "Action Plan"). In any year that an Action Plan is required, such Action Plan shall be submitted sixty (60) days immediately following receipt of the sampling results that triggered the Action Plan.

    22.1.    <u>Requirements</u>. Each Action Plan submitted shall include, at a minimum: (1) the identification of the contaminant(s) discharged in excess of the Table 1 Value(s), (2) an assessment of the source of each contaminant exceedance, (3) the identification of additional BMPs, including storm water treatment or other appropriate measures, that shall be implemented to achieve compliance with the Table 1 Value(s), and (4) time schedules for implementation of the proposed BMPs. The time schedule(s) for implementation shall ensure all BMPs are implemented as soon as possible, but in no event later than sixty (60) days following Coastkeeper approval in Paragraph 22.2 immediately following the submission of the Action Plan, unless a later implementation date is mutually agreed upon by the Parties.

    22.2.    <u>Action Plan Review</u>. Coastkeeper shall have thirty (30) days upon receipt of Hixson's Action Plan to provide Hixson with comments. Within thirty (30) days of receiving Coastkeeper's comments on the Action Plan, Hixson shall accept and incorporate Coastkeeper's comments into the Action Plan, or, alternatively, justify in writing why any comment is not being incorporated. Any disputes regarding the adequacy of a particular BMP shall not impact the schedule for implementing any other BMP set forth in the Action Plan. Any disputes as to the adequacy of the Action Plan and/or Hixson's failure to incorporate Coastkeeper's comments shall be resolved pursuant to the

dispute resolution provisions of this Consent Decree, set out in Section III below.

23.    When an Action Plan is completed, Hixson shall revise the Facility SWPPP within thirty (30) days of completion of the Action Plan to reflect the changes required by the Action Plan. Hixson shall notify Coastkeeper in writing when the Action Plan has been implemented and shall submit the revised SWPPP to Coastkeeper for review and comment as set out in Paragraphs 26 and 27 below.

24.    <u>Action Plan Payments</u>. If Hixson is required to submit an Action Plan to Coastkeeper in accordance with Paragraph 22 above, Hixson shall make a one-time payment of Five Thousand Dollars ($5,000) per Action Plan concurrently with each Action Plan submittal. Such payment shall be delivered via certified mail or overnight delivery to: Orange County Coastkeeper, 3151 Airway Avenue, Suite F-110, Costa Mesa, CA 92626, unless made via wire transfer.

**F.    Storm Water Pollution Prevention Plan**

25.    <u>SWPPP</u>.  Within the Phase I period as indicated in Paragraph 12.1 above, Hixson shall amend the Facility's SWPPP to incorporate the requirements of the Storm Water Permit and this Consent Decree, which include but are not limited to the following:

25.1.    Sign and certify the Facility SWPPP;

25.2.    Update the individual(s) responsible for compliance with the Storm Water Permit and this Consent Decree, including the name of the person heading the program and positions responsible for specific areas of compliance (e.g., Safety Coordinator, collecting storm water samples) and the procedures to identify alternate team members to implement the SWPPP and conduct required monitoring when the regularly assigned team members are temporarily unavailable;

25.3.    Update Facility BMPs as set forth in this Consent Decree within the time periods indicated above in Paragraph 12;

25.4.  Revise the pollutant source assessment to include all pollutants likely to be present at the Facility, including, but not limited to, each of the pollutants identified in Table 1 of this Consent Decree;

25.5.  Revise the monitoring plan to address all pollutants identified in the pollutant source assessment, including, but not limited to, each of the pollutants identified in Table 1 of this Consent Decree;

25.6.  Include a list of materials that have spilled or leaked from the Facility, their location(s), characteristics, and approximate quantities, and preventative measures taken to ensure spills or leaks of the material(s) do not reoccur; and

25.7.  Update the Facility's Exceedance Response Action status.

26.  <u>Revising the SWPPP</u>. Hixson shall revise the Facility SWPPP if there are any changes in the Facility's operations, including but not limited to changes to storm water discharge point(s) or changes or additions to the BMPs at the Facility, whether made pursuant to an Action Plan or not, within thirty (30) days of the occurrence of any of the above-listed events.

27.  <u>Commenting on Revised SWPPPs</u>. Hixson shall submit each revised SWPPP to Coastkeeper for review and comment within thirty (30) days of its completion. Coastkeeper shall provide comments, if any, to Hixson within thirty (30) days of receipt of the SWPPP. Within thirty (30) days of receiving Coastkeeper's comments on the SWPPP, Hixson shall accept and incorporate Coastkeeper's comments into the SWPPP or, alternatively, justify in writing why any comment is not being incorporated. Any disputes as to the adequacy of a SWPPP and/or Hixson's failure to incorporate Coastkeeper's comments shall be resolved pursuant to the dispute resolution provisions of this Consent Decree, set out in Section III below.

## G.  Compliance Monitoring and Reporting

28.  <u>Site Inspections</u>. Coastkeeper and its representatives may conduct one (1) wet

weather site inspections and one (1) dry weather site inspections per year at the Facility during the Term of this Consent Decree. In the event of a dispute between the Settling Parties regarding Defendants' compliance with this Consent Decree and provided a site inspection would be relevant to resolving such dispute, the Settling Parties agree to meet and confer regarding an additional site inspection, which inspection shall not be unreasonably denied.

28.1.    The site inspections shall occur during normal business hours. Coastkeeper shall provide Hixson with forty-eight (48) hours' notice before any wet weather site inspection and seventy-two (72) hours' notice before any dry weather site inspection. Notice will be provided via electronic mail to the notice recipient(s) designated in Paragraph 45 below. For any site inspection requested to occur in wet weather, Coastkeeper shall be entitled to adjust timing during normal business hours or reschedule the inspection for an alternative date during normal business hours if the forecast changes and anticipated precipitation appears unlikely, and thus frustrates the purpose of visiting the Facility in wet weather. As used throughout this Paragraph 28.1, "normal business hours" shall mean and refer to the Facility operating hours as identified in the Facility SWPPP.

28.2.    During the site inspections, Coastkeeper and its representatives shall be allowed access to the Facility's SWPPP, visual observation records, employee training records, and other storm water monitoring records, reports, photographs, and sampling data for the Facility.

28.3.    During the site inspections, Coastkeeper and/or its representatives may inspect and collect samples of storm water discharges from the Facility and take photos and/or videos related to Storm Water Permit and/or Consent Decree compliance. A certified California laboratory shall

analyze samples collected by Coastkeeper and copies of the lab reports shall be provided to Hixson within five (5) business days of Coastkeeper's receipt.   Within ten (10) business days after a site inspection, Coastkeeper shall provide Hixson with a duplicate set of any photographs and videos that were taken.

29.   Compliance Monitoring and Oversight. Hixson agrees to partially defray costs associated with Coastkeeper's monitoring of Hixson's compliance with this Consent Decree in the amount of Thirty-Two Thousand Five Hundred Dollars ($32,500). Such payment shall be made within ninety (90) days of the Effective Date, with 1/3 payments due thirty (30), sixty (60) and ninety (90) days after the Effective Date. Payment shall be delivered via certified mail or overnight delivery to: Orange County Coastkeeper, 3151 Airway Avenue, Suite F-110, Costa Mesa, CA 92626, unless made via wire transfer.

29.1.  If Hixson is unable to meet the Preferred BMP Deadline, Hixson will make an additional payment of Five Thousand Dollars ($5,000) to partially defray costs associated with Coastkeeper's monitoring of Hixson's compliance with this Consent Decree. Such payment shall be made by October 1, 2023. Payment shall be delivered via certified mail or overnight delivery to: Orange County Coastkeeper, 3151 Airway Avenue, Suite F-110, Costa Mesa, CA 92626, unless made via wire transfer.

30.   Reporting and Document Provision. During the Term of this Consent Decree, Hixson shall provide Coastkeeper with a copy of all documents, monitoring and/or sampling data, written communications, and/or correspondence related to storm water quality and/or Permit compliance at the Facility that are submitted to the Regional Water Board, State Water Board, and/or any Federal, State, or local agency, county, or municipality. Such reports and documents shall be provided to Coastkeeper concurrently as they are sent to the agencies, counties, and/or municipalities. Any documents, written

communications, and/or correspondence related to Defendants' compliance with the Storm Water Permit and/or to storm water quality received by Defendants from any Federal, State, or local agency, county or municipality shall be provided to Coastkeeper within five (5) business days of receipt by Defendants.

**H.  Environmental Mitigation Project, Litigation Fees and Costs, Stipulated Penalties and Interest.**

31.      Environmental Mitigation Project. To remediate the environmental harms alleged to have resulted from the allegations in the Complaint, Hixson agrees to make a payment of Thirty-Four Thousand Dollars ($34,000) to the Newport Bay Conservancy and Thirty-Four Thousand Dollars ($34,000) to the Rose Foundation to fund environmental project activities that will benefit Southern California waters, including restoration and/or preservation of Newport Bay. The complete payment shall be made within ninety (90) days of the Effective Date, with 1/3 payments due thirty (30), sixty (60) and ninety (90) days after the Effective Date. The payment to Newport Bay Conservancy shall be made via check and made payable to "Newport Bay Conservancy" and delivered to P.O. Box 10804, Newport Beach, California 92658. The payment to the Rose Foundation shall be made via check and made payable to the "Rose Foundation" and delivered to 201 4th Street, Suite 102, Oakland, California 94607-4369. Hixson shall provide Coastkeeper with a copy of such payment and copy Coastkeeper and its attorneys on any related correspondence.

31.1.  If Hixson is unable to meet the Preferred BMP Deadline, Hixson will make an additional payment of Twenty-Two Thousand Dollars ($22,000) to the Newport Bay Conservancy to fund environmental project activities that will benefit Southern California waters, including restoration and/or preservation of Newport Bay. The payment shall be made by October 1, 2023. The payment to the Newport Bay Conservancy shall be made as instructed in paragraph 31 above. Hixson shall provide Coastkeeper with

a copy of such payment and copy Coastkeeper and its attorneys on any related correspondence.

32.     Coastkeeper's Fees and Costs. To partially reimburse Coastkeeper for its investigation fees and costs, expert/consultant fees and costs, reasonable attorneys' fees, and other costs incurred as a result of investigating and filing the lawsuit and negotiating resolution of this matter, Hixson shall pay a total of Seventy Thousand Dollars ($70,000) within ninety (90) days of the Effective Date, with 1/3 payments due thirty (30), sixty (60) and ninety (90) days after the Effective Date delivered via certified mail or overnight delivery to: Orange County Coastkeeper, 3151 Airway Avenue, Suite F-110, Costa Mesa, CA 92626, unless made via wire transfer.

33.     Stipulated Payment. Hixson shall make a stipulated remediation payment of $1,000 (One Thousand Dollars) for any and each missed deadline specified in this Consent Decree not previously extended in writing by the Settling Parties. Payments for a missed deadline shall be made for the restoration and/or improvement of the watershed in the area affected by Defendants' discharges and shall be made to the Newport Bay Conservancy identified above and delivered via check or wire transfer. Hixson agrees to make the stipulated payment within thirty (30) days of the missed deadline. Hixson shall provide Coastkeeper with a copy of each such payment at the time it is made.

## III.   **DISPUTE RESOLUTION**

34.     Court Enforcement Authority. This Court shall retain jurisdiction over this matter for the Term of this Consent Decree for the purposes of enforcing the terms and conditions and adjudicating all disputes among the Settling Parties that may arise under the provisions of this Consent Decree. The Court shall have the power to enforce this Consent Decree with all available legal and equitable remedies, including contempt.

35.     Meet and Confer. The Settling Parties shall at all times work informally in good faith to address any issues that might arise concerning Defendants' compliance with

the Storm Water Permit or the Clean Water Act occurring or arising after the Effective Date of the Consent Decree, however; a Settling Party shall be able to invoke the dispute resolution procedures of this Section III by notifying all other Settling Parties in writing of the matter(s) in dispute and the disputing party's proposal for resolution. The Settling Parties shall then meet and confer in good faith (either telephonically or in person) within ten (10) days from the date of the notice in an attempt to fully resolve the dispute within thirty (30) days. The Settling Parties may elect to extend this time in an effort to resolve the dispute without court intervention.

36. <u>Formal Resolution</u>. If the Settling Parties cannot resolve a dispute through the meet and confer process discussed above, the party initiating the dispute resolution provision may invoke formal dispute resolution by filing a motion before the United States District Court for the Central District of California. The Settling Parties agree to request an expedited hearing schedule on the motion.

37. <u>Fees and Costs</u>. If intervention by the District Court is required, civil penalties and litigation costs and fees incurred in conducting the meet and confer or otherwise addressing and/or resolving any dispute, including an alleged breach of this Consent Decree, shall be awarded to the prevailing or substantially prevailing party in accordance with the standard established by Section 505 of the Clean Water Act, 33 U.S.C. §§ 1365(d) and 1319(d).

## IV.   <u>MUTUAL RELEASE OF LIABILITY AND COVENANT NOT TO SUE</u>

38. <u>Coastkeeper's Release</u>. Upon the Effective Date of this Consent Decree, Coastkeeper, on its own behalf and on behalf of its current and former officers, directors, employees, and each of their successors and assigns, and its agents, attorneys, and other representatives, hereby releases Defendants and each of their current and former officers, directors, members, employees, shareholders and each of their predecessors, successors and assigns, and each of their agents, attorneys, consultants, and other representatives of and from, and waives all Clean Water Act claims which were or could have been asserted

in Coastkeeper's Complaint up to and including the Termination Date of this Consent Decree.

39. <u>Defendants' Release</u>. Upon the Effective Date of this Consent Decree, Defendants, on their own behalf and on behalf of their current and former officers, directors, employees, members, and each of its successors and assigns, and their agents, attorneys, and other representatives, hereby release Coastkeeper (and its current and former officers, directors, employees, members, parents, subsidiaries, and affiliates, and each of their successors and assigns, and its agents, attorneys, and other representatives) of and from, and waives all claims which arise from or pertain to this action, including all claims for fees (including fees of attorneys, experts, and others), costs, expenses or any other sum incurred or claimed for matters related to, or which could have been asserted in response to, Coastkeeper's Complaint up to and including the Termination Date of this Consent Decree.

## V.   **MISCELLANEOUS PROVISIONS**

40. <u>No Admission of Liability</u>. Neither this Consent Decree, the implementation of additional BMPs, nor any payment made pursuant to this Consent Decree shall constitute or be construed as a finding, adjudication, admission or acknowledgment of any fact, law, or liability, nor as an admission of violation of any law, rule, or regulation.

41. <u>Force Majeure</u>. No Settling Party shall be considered to be in default in the performance of any of its respective obligations under this Consent Decree when performance becomes impossible due to an event of Force Majeure. Force Majeure includes any act of God, war, fire, earthquake, windstorm, flood or natural catastrophe; civil disturbance, vandalism, pandemic , sabotage or terrorism; restraint by court order or public authority or agency; or action or non-action by, or inability to obtain the necessary authorizations or approvals from any governmental agency. A Force Majeure shall not include normal inclement weather, economic hardship, inability to pay, or employee negligence. Any party seeking to rely upon this paragraph to excuse or postpone

performance shall have the burden of establishing that it could not reasonably have been expected to avoid the Force Majeure event and which by exercise of due diligence has been unable to overcome the failure of performance. The Settling Parties shall exercise due diligence to resolve and remove any Force Majeure event. Delay in compliance with a specific obligation under this Consent Decree due to Force Majeure as defined in this paragraph shall not excuse or delay compliance with any or all other obligations required under this Consent Decree.

42.    Construction. The language in all parts of this Consent Decree shall be construed according to its plain and ordinary meaning, except as to those terms defined in the Storm Water Permit, the Clean Water Act, or specifically herein. The captions and paragraph headings used in this Consent Decree are for reference only and shall not affect the construction of this Consent Decree.

43.    Choice of Law. The laws of the United States shall govern this Consent Decree.

44.    Severability. If any provision, paragraph, section, or sentence of this Consent Decree is held by a court to be unenforceable, the validity of the enforceable provisions shall not be adversely affected.

45.    Correspondence. All documents and/or notices required herein or any other correspondence pertaining to this Consent Decree shall be sent by electronic mail or, if electronic mail transmission is not feasible, via certified U.S. Mail with return receipt, or courier, as follows:

If to Plaintiff:

Orange County Coastkeeper
Attn: Legal Department
Email: Sarah@coastkeeper.org & Lauren@coastkeeper.org
3151 Airway Avenue, Suite F-110
Costa Mesa, California 92626

If to Hixson:

Douglas C. Greene
President
Hixson Metal Finishing
829 Production Place,
Newport Beach, CA 92663
Douglas.greene@HMFgroup.com
Bruce.greene@HMFgroup.com

With a copy to:

Charles H. "Chuck" Pomeroy
StilesPomeroy LLP
301 E. Colorado Blvd., Suite 600
Pasadena, CA 91101
cpomeroy@stilespomeroy.com


If to FPC:

Adam John Mikkelsen
FPC Management LLC
307 Medina Way
Newport Beach, CA 92661
amikkelsen@fbfloans.com


If to Trustee:

Reid Washbon, Trustee
Reid Washbon Trust
810 Production Place
Newport Beach, CA 92663
reidwashbon@earthlink.net


Any change of address or addresses shall be communicated in the manner described above for giving notices. Notifications of communications shall be deemed submitted

immediately after receipt via email or the next business day after having been deposited with an overnight mail/delivery service.

46.   Effect of Consent Decree. Nothing in this Consent Decree shall be construed to affect or limit in any way Defendants' obligation to comply with all Federal, State, and local laws and regulations governing any activity required by this Consent Decree. Compliance with this Consent Decree shall not be deemed to constitute compliance with the Storm Water Permit, the Clean Water Act, or any other law, rule, or regulation.

47.   Hixson Assignment; Landlords Sale of Property. Subject only to the express conditions contained in this Consent Decree, all the rights, duties and obligations contained in this Consent Decree shall inure to the benefit of and be binding upon the Settling Parties, and their successors and assigns. In the event a Hixson transferee or assign ("Hixson Assignee") will continue industrial operations at the Facility, Hixson shall notify Coastkeeper ten (10) days in advance of the proposed transfer or assignment ("the Assignment Notice") and within ten (10) days following the Assignment Notice, Hixson will provide Coastkeeper with a written assignment and assumption duly executed by Hixson and the Hixson Assignee assigning Hixson's obligations under this Consent Decree to the Hixson Assignee. In the event the Landlords transfer, sell, or otherwise dispose of the Facility and underlying real property, Landlords shall notify Coastkeeper ten (10) days in advance of the proposed transfer, sale, or disposition (the "Property Transfer Notice") and within ten (10) days following the Property Transfer Notice, Landlords will provide Coastkeeper with a written assignment duly executed and acknowledged by Landlords and the Property (as defined in Paragraph 48) transferee ("Property Transferee") assigning Landlord's obligations under this Consent Decree to Property Transferee.

48.   Change in Tenancy. In the event of any change in or termination of Hixson's leased interest in the real property underlying the Facility (the "Property") during the term of this Consent Decree, Defendants shall notify Coastkeeper of the same in writing as soon as practicable, but in all instances before the change or termination taking effect. If Hixson

ceases to be the Property tenant and Landlord(s) wish to lease the Property or any portion thereof to a new tenant whose activities would require Storm Water Permit coverage ("New Industrial Tenant") during the Term of this Consent Decree, (i) Landlord(s) shall require the New Industrial Tenant under its lease to assume Hixson's duties and obligations contained in this Consent Decree, and (ii) within five (5) days of executing a lease with a New Industrial Tenant, Landlord(s) shall provide Coastkeeper with a fully executed copy of the lease. If Hixson ceases to be the Property tenant and Landlord(s) wishes to lease the Property or any portion thereof to a new industrial tenant who would not need to obtain coverage under the Storm Water Permit ("New Non-Industrial Tenant") during the Term of this Consent Decree, within five (5) days of executing any new lease with a New Non-Industrial Tenant, Landlord(s) shall provide Coastkeeper with a certification signed by Landlord(s) and New Non-Industrial Tenant acknowledging that the New Non-Industrial Tenant is not required to obtain coverage under the Storm Water Permit.

49.    <u>Counterparts</u>. This Consent Decree may be executed in any number of counterparts, all of which together shall constitute one original document. Telecopy, email of a .pdf signature, and/or facsimile copies of original signature shall be deemed to be originally executed counterparts of this Consent Decree.

50.    <u>Modification of the Consent Decree</u>. This Consent Decree, and any provisions herein, may not be changed, waived, discharged, extended, or terminated unless by a written instrument, signed by the Settling Parties and approved by the Court. Unless otherwise specified herein, any request to modify any provision of the Consent Decree, including, but not limited to, any deadline(s) set forth herein, must be made in writing at least fourteen (14) days before the existing deadline(s) applicable to the provision(s) proposed to be modified.

51.    <u>Full Settlement</u>. This Consent Decree constitutes a full and final settlement of this matter.

52.    <u>Negotiated Settlement</u>. The Settling Parties have negotiated this Consent

Decree and agree that it shall not be construed against the party preparing it but shall be construed as if the Settling Parties jointly prepared this Consent Decree, and any uncertainty and/or ambiguity shall not be interpreted against any one party.

53.  <u>Integration Clause</u>. This is an integrated Consent Decree. This Consent Decree is intended to be a full and complete statement of the terms of the agreement between the Settling Parties and expressly supersedes any and all prior oral or written agreements covenants, representations, and warranties (express or implied) concerning the subject matter of this Consent Decree.

54.  <u>Authority</u>. The undersigned representatives for Plaintiff and Defendants each certify s/he is fully authorized by the party whom s/he represents to enter into the terms and conditions of this Consent Decree. The Settling Parties certify that their undersigned representatives are fully authorized to enter into this Consent Decree, to execute it on behalf of the Settling Parties, and to legally bind the Settling Parties to its terms.

55.  <u>Validity</u>. The Settling Parties agree to be bound by this Consent Decree and not to contest its validity in any subsequent proceeding to implement or enforce its terms.

[Remainder of this page intentionally left blank]

**IN WITNESS WHEREOF**, the undersigned have executed this Consent Decree as of the date first set forth below.

APPROVED AS TO CONTENT

Dated: _____, 2022        By: _____
                                          Garry Brown
                                          Orange County Coastkeeper

Dated: _____, 2022        By: _____
                                          Name: _____
                                          Title: _____

Dated: _____, 2022        By:_____ _____
                                          Name: _____
                                          Title: _____

Dated: _____, 2022        By:_____ _____
                                          Name: _____
                                          Title: _____

APPROVED AS TO FORM

                                          ORANGE COUNTY COASTKEEPER

Dated: _____, 2022        By: _____
                                          Sarah Spinuzzi
                                          Attorney for Plaintiff

                                          STILES POMEROY LLP

Dated: _____, 2022        By: _____
                                          Charles H. Pomeroy
                                          Attorney for Defendants

**IT IS SO ORDERED.**

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

Dated: December 02, 2022

_____